IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYNNE MAROTTA : CIVIL ACTION
 :
 v. :
 :
TOLL BROTHERS, INC. : NO. 09-2328

MEMORANDUM

McLaughlin, J. March 3, 2010

The plaintiff, Lynne Marotta, brought suit against her former employer, Toll Bros., Inc. ("Toll"),[1] alleging six counts of employment discrimination under federal and state statutes. The defendant moves to compel arbitration and dismiss the plaintiff's amended complaint or, alternatively, to dismiss the plaintiff's claim of marital status discrimination and stay the proceedings pending arbitration. Because the Court finds that the plaintiff signed a valid and enforceable arbitration agreement, the Court will compel arbitration and stay the proceedings pending final binding arbitration.

I. Background

The plaintiff began her employment with Toll in

---

[1] In her complaint and amended complaint, the plaintiff named "Toll Brothers, Inc." as the defendant. The defendant clarifies that its correct identification is "Toll Bros., Inc." The Court will use the defendant's clarification for purposes of identification.

October, 1987.[2]  In 1996, she obtained a bachelor's degree in management with a minor in accounting, and in 2001, she was promoted from project administrator to project manager.  Aff. of Lynne Marotta ("Marotta Aff.") ¶ 7; Compl. ¶¶ 18-19.

Sometime in November or December of 2001, Toll communicated to its employees that the employees would be asked to sign an arbitration agreement related to their employment with Toll.  The Human Resources department ("HR") at Toll contacted the plaintiff in early February because it had not yet received the plaintiff's signed agreement.  Decl. of Michele Wolfe, Vice President of Human Resources at Toll ("Wolfe Decl.") ¶ 4, Ex. D to Def.'s M.; Marotta Aff. ¶¶ 6, 13.

According to the plaintiff, Toll representatives, including HR staff, told the plaintiff that if she did not sign the agreement, she would lose her job.  The defendant disputes that it told its employees that they would lose their jobs upon not signing the agreement.  Toll points to a memorandum

---

[2] The facts are taken from the plaintiff's complaint, her affidavit submitted with her memorandum in opposition to the defendant's motion, and the various documents submitted with the defendant's motion: a declaration from a vice president at Toll, the plaintiff's right to sue letter and charges of discrimination filed with the EEOC, the signed arbitration agreement between the parties, and a letter from Toll's counsel to the plaintiff's counsel.  As such, the Court will apply the summary judgment standard to this action and consider the evidence in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991).

2

circulated to Division Vice Presidents, which noted that employees who do not wish to sign the arbitration agreement should state as such on the agreement itself and return it to HR. Toll also states that one employee under the same supervisor as the plaintiff refused to sign the agreement and remained employed at Toll until her resignation on May 14, 2004. Marotta Aff. ¶ 18; Memorandum Mar. 14, 2002, Ex. 1 to Wolfe Decl.; Wolfe Decl. 13.

The plaintiff submitted her signed arbitration agreement to HR on February 21, 2002, after making changes to its text. According to the plaintiff, HR told her that the agreement could not be altered in any way and that the plaintiff had to "take it or leave it." On March 19, 2002, the plaintiff signed a clean copy of the agreement and returned it to HR. Marotta Decl. ¶¶ 27, 29, 30; Arbitration Agreement ("Agreement"), Ex. A to Def.'s M.

The arbitration agreement notes that the plaintiff and Toll "intend[] to be legally bound" by the terms of the agreement. It states that "[a]ll disputes . . . arising out of or in connection with [the plaintiff's] employment or its termination, including but not limited to those concerning workplace discrimination, shall exclusively be submitted to and determined by final and binding arbitration." By entering into the agreement, the plaintiff is "waiving [her] right to have a

3

court resolve any disputes or claims [she] may have regarding [her] employment, including any dispute or claims . . . arising from federal, state and local statutes prohibiting employment discrimination, including sexual harassment." Agreement ¶¶ 1, 2.

The agreement explains that a single arbitrator from the American Arbitration Association will decide the dispute in accordance with the association's rules. The arbitrator must write the decision "and set forth the findings and conclusions upon which the decision is based." His or her decision will be "final and binding . . . but may be set aside or modified by a reviewing court solely on the grounds that the Arbitrator made a material error of law, or in accordance with the Federal Arbitration Act." Id. ¶¶ 1-2; 6.

Toll "will bear the costs of the filing fee and the Arbitrator's fee." The arbitrator has discretion to "award all or some of the Employee's or Company's attorneys' fees and costs, in addition to any such awards required by law." Further, "If any provision of [the] Agreement is construed by a court of competent jurisdiction or Arbitrator to be invalid or unenforceable, the remainder of [the] Agreement shall not be affected and the remaining provisions will be given full force and effect without regard to the unenforceable provisions." Id. ¶¶ 7, 9.

By signing the agreement, the plaintiff acknowledged

that she received three days of additional paid vacation, and that she read, understood, and agreed to all of the provisions of the agreement. Id. ¶ 8.

The plaintiff was fired from her job on Friday, June 6, 2008. Her husband, who also worked at Toll, was fired on Monday, June 9, 2008. Marotta Aff. ¶¶ 38, 39.

The plaintiff brought suit on May 21, 2009, and on July 8, 2009, the defendant moved to dismiss the complaint. The plaintiff amended her complaint on July 28, 2009, and the Court denied as moot and without prejudice the defendant's motion to dismiss. In her amended complaint, the plaintiff brought six claims of discrimination: failure to promote, retaliation, and discriminatory termination under Title VII; violations of the Equal Pay Act; and violations of New Jersey's Law Against Discrimination for marital status and gender discrimination.

On August 17, 2009, the defendant filed the instant motion to compel arbitration and to dismiss the amended complaint. The defendant argues that the Court should either compel arbitration and dismiss the amended complaint in its entirety with prejudice, or, alternatively, dismiss the plaintiff's claim of marital status discrimination and stay the proceedings pending final binding arbitration. It argues that the agreement is valid, the plaintiff's claims fall under the scope of the agreement, and there are no principles of contract

law that would render the agreement unenforceable. The defendant also seeks costs and attorneys' fees for its preparation, filing, and service of its motion, arguing that the plaintiff's complaint is frivolous in view of the parties' arbitration agreement.

The plaintiff argues in her opposition that the agreement is unenforceable because the plaintiff was threatened with losing her job if she did not sign the arbitration agreement. She argues that the agreement therefore lacked consideration, was executed under economic duress, was illusory, was not signed knowingly and willfully by the plaintiff, and is procedurally and substantively unconscionable and against public policy. She further disputes the dismissal of her marital status claim, and she denies that her lawsuit is frivolous.

II. Analysis

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may seek an order to compel arbitration. If a court orders the parties to compulsory arbitration, the court may stay the proceedings pending the arbitration, or, if all of the claims involved are arbitrable, dismiss the action. Seus v. Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998).

A motion to compel arbitration is treated as a motion to dismiss for failure to state a claim upon which relief can be

6

granted. Palcko v. Airborne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004). In deciding a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by the parties, and decide the matter under a summary judgment standard. Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991). Summary judgment is appropriate if there is no genuine issue as to any material fact and judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c).

    A.    Formation of the Arbitration Agreement

Before compelling arbitration, a court must ensure that: (1) the parties entered into a valid arbitration agreement, and (2) the specific dispute falls within the substantive scope of the agreement. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1114 (3d Cir. 1993). With respect to the second prong of the Court's inquiry, the parties do not dispute that the subject matter of the plaintiff's claims falls within the scope of the agreement. Pl.'s Opp. 5. The Court agrees: the agreement states that "all disputes . . . including but not limited to those concerning workplace discrimination" shall be submitted to binding arbitration, and all of the plaintiff's claims allege employment discrimination. See Agreement ¶ 1; Compl.

The Court also finds that the arbitration agreement

7

contains the requirements for a valid agreement. Courts look to the relevant state law of contracts to determine whether a valid arbitration agreement exists. Homa v. Am. Express Co., 558 F.3d 225, 229 (3d Cir. 2009). Under both Pennsylvania law and New Jersey law,[3] a valid contract exists when: (1) the parties manifest an intention to be bound by the agreement, (2) the terms of the agreement are sufficiently definite, and (3) the agreement is supported by consideration. See Atacs Corp. v. Trans World Commc'n, 155 F.3d 659, 666 (3d Cir. 1998) (Pennsylvania); Creek Ranch, Inc. v. N.J. Tpk. Auth., 383 A.2d 110, 115 (N.J. 1978) (New Jersey).

The agreement states that the parties intend to be legally bound by the agreement and that the parties "have read and understand all of the provisions of this arbitration agreement and . . . agree to all of the provisions set forth." The terms of the agreement are sufficiently definite because the agreement directs that all employment-related claims, including

---

[3] When applying state law contract principles to arbitration agreements, courts look to the laws of the involved state or territory. Gay v. Creditinform, 511 F.3d 369, 388 (3d Cir. 2007). The plaintiff's complaint notes that Toll is registered to do business in both Pennsylvania and New Jersey, and Toll required the plaintiff to work in both states. Compl. ¶¶ 119-20. The defendant argues that the Court need not resolve a choice-of-law issue because it will prevail under either state's law. The plaintiff does not address the choice of law issue, but she cites primarily to Pennsylvania law in her opposition brief. The Court will not address the choice-of-law issue and will decide this motion pursuant to both Pennsylvania and New Jersey law.

8

federal and state statutory discrimination claims, are subject to arbitration before a single arbitrator. Agreement ¶¶ 1, 3. The agreement also outlines the procedures governing the arbitration. Id. at ¶¶ 3-7.

The plaintiff does not dispute that the parties intended to be bound by the agreement or that the terms of the agreement are sufficiently clear. She does, however, challenge whether the agreement is supported by valid consideration. She argues that her continued employment cannot constitute consideration for the agreement because employment contracts entered into after a job start date require separate consideration from that of the existing employment relationship.

The Court finds that the arbitration agreement is supported by adequate consideration, even without an evaluation of the plaintiff's argument, because the agreement contains several forms of consideration.[4] Consideration confers a benefit on the promisor or a detriment on the promisee, and must be an act, forbearance or promise in exchange for the original promise.

---

[4] Although the Court takes no view on the plaintiff's argument with respect to her continued employment as consideration, it notes that courts consistently find continued employment to be adequate consideration for arbitration agreements. See e.g., Grant v. Phila. Eagles, L.L.C., No. 09-1222, 2009 U.S. Dist. LEXIS 53075, at *15-16 (E.D. Pa. June 24, 2009); Kanoff v. Better Life Renting Corp., No. 03-2326, 2008 U.S. Dist. LEXIS 10994, at *5 (D.N.J. Feb. 14, 2008); Hamilton v. Travelers Prop. & Cas. Corp., No 01-11, 2001 U.S. Dist. LEXIS 6123, at *7 (E.D. Pa. May 11, 2001).

9

Channel Home Ctrs. v. Grossman, 795 F.2d 291, 299 (3d Cir. 1986). The Court of Appeals for the Third Circuit has held that an arbitration agreement in the employment context contains adequate consideration when both parties to the contract agree to be legally bound by it. Blair v. Scott Specialty Gases, 283 F.3d 595, 603-04 (3d Cir. 2002). Here, both the plaintiff and defendant agreed to be legally bound by the arbitration agreement for all disputes arising out of the plaintiff's employment. Agreement ¶ 1.[5]

Further, consideration found to be a "very slight advantage to one party or a trifling inconvenience to the other" is adequate consideration for a contract. Oscar v. Simeonidis, 800 A.2d 271, 276 (N.J. Super. Ct. 2002); Wilson v. Viking Corp., 3 A.2d 180, 184 (Pa. Super. Ct. 1938). Here, the agreement states that the plaintiff acknowledged receipt of three additional days of paid vacation in consideration for her agreement to arbitrate her claims, constituting sufficient consideration. See Agreement ¶ 8. Although the plaintiff states in her affidavit that she told Toll she did not want the

---

[5] To the extent that the plaintiff claims that Toll's promise to arbitrate its disputes against the plaintiff cannot amount to consideration because "circumstances under which an employer would desire a public jury trial are scarce," the Court rejects this argument. See Pl.'s Opp. 11. The Court of Appeals for the Third Circuit has held that consideration in the form of a mutual obligation to arbitrate applies directly to arbitration agreements between an employer and employee and to claims involving employment discrimination. Blair, 283 F.3d at 603.

10

additional vacation days, she does not appear to dispute that she received them. See Marotta Aff. ¶ 19.[6]

   B.   Defenses to Enforcement

The plaintiff argues that the arbitration agreement between the parties is unenforceable because Toll threatened the plaintiff with the loss of her job if she did not sign the agreement. The plaintiff argues that this constitutes economic duress and procedural and substantive unconscionability, and that it is contrary to public policy. The plaintiff also argues that she did not knowingly and willfully waive her right to a jury trial. Although courts may not enforce arbitration agreements if such agreements are revokable based on a generally applicable principle of contract law, such as fraud, duress, or mistake, Seus, 146 F.3d at 183-84, the Court finds that no such principle applies, and the agreement is enforceable.

   First, the plaintiff has not demonstrated that she was subject to economic duress when signing the arbitration agreement. Under Pennsylvania law, economic duress exists "whenever one person, by the unlawful act of another, is induced to enter into contractual relations under such circumstances as

---

[6] The plaintiff also argues that a promise of continued employment as consideration is illusory because the plaintiff was an at-will employee. Because the Court finds that the arbitration agreement is supported by adequate consideration irrespective of the plaintiff's continued employment, the Court will not address the plaintiff's position.

11

to indicate that he has been deprived of the exercise of free will." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 911 (3d Cir. 1985). Both New Jersey and Pennsylvania courts find that duress is present only if the defendant causes the plaintiff's financial distress. Id. (Pennsylvania); Cont'l Bank of Pa. v. Barclay Riding Acad., 459 A.2d 1163, 1176 (N.J. 1983) (New Jersey). A plaintiff's fear of the loss of her job is insufficient to amount to economic duress when "the situation that caused [her] to fear the loss of [her] job – the need to support [her family] – was of [her] own making," and not that of the defendant. Harsco Corp., 779 F.2d at 911.

Here, the plaintiff has not presented evidence to demonstrate that she was deprived of free will or that the defendant caused her economic situation. The plaintiff had several months, from November or December 2001 until March 19, 2002, to consider the arbitration agreement before she signed it. In her affidavit, she explains that she reviewed and discussed the agreement with others. Marotta Aff. ¶¶ 16, 18, 2, 27. She presents no evidence beyond the fact that both she and her husband worked for Toll to demonstrate that Toll caused the plaintiff's economic situation. The Court of Appeals for the Third Circuit has already rejected economic duress premised on a plaintiff's fear of the loss of her job upon not signing an employment agreement. Harsco Corp., 779 F.2d at 911.

12

Second, the plaintiff has not demonstrated that the arbitration agreement is unconscionable. A plaintiff must establish both procedural and substantive unconscionability for a Court to render a contract unenforceable. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (Pennsylvania); Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, (N.J. Super. Ct. 2002) (New Jersey). Procedural unconscionability relates to the process by which the parties reached the agreement, and substantive unconscionability relates to whether the arbitration provision unreasonably favors the party asserting it. Zimmer v. Cooperneff Advisors, Inc., 523 F.3d 224, 228 (3d Cir. 2008).

The plaintiff contends that the agreement is unconscionable because it was a contract of adhesion, such that the plaintiff could not negotiate the terms and was forced to "take it or leave it." She argues that the agreement is substantively unconscionable because Toll benefits from arbitrating all claims and Toll had superior bargaining power.

Although the plaintiff may have been unable to alter the terms of the agreement, the Court finds that the contract is not unconscionable because it does not unreasonably favor Toll. Inequality in bargaining power is itself insufficient for finding an arbitration agreement unenforceable in the employment context. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Whether an arbitration agreement constitutes an unenforceable

13

contract is a fact-intensive inquiry. See Martindale v. Sandvik, Inc., 800 A.2d 872, 880 (N.J. 2002); Huegel v. Mifflin Constr. Co., 796 A.2d 350, 357 (Pa. Super. Ct. 2002).

Here, the terms of the agreement do not favor Toll as evident by their neutrality. Both Toll and the plaintiff consented to arbitrating all claims, demonstrating that neither party is unreasonably favored.[7] Under the terms of the agreement, Toll must pay the costs of the arbitration, and the arbitrator may award attorney's fees and costs to either Toll or the plaintiff, depending on the outcome of the arbitration.[8] The

---

[7] The plaintiff argues that the agreement disproportionately favors Toll because Toll could never have claims against the plaintiff, such that it has effectively not waived any right to a jury trial. She also argues that Toll benefits from a non-jury adjudication because Toll will be shielded from the public embarrassment of a trial. The Court finds these arguments uncompelling. The plaintiff cites no authority for her assertions, and her arguments contravene the strong federal policy in favor of arbitration, which explicitly extends to the employment context. See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009); Seus, 146 F.3d at 182-83.

[8] The plaintiff argues that this provision of the agreement is unconscionable because it may deter plaintiffs from bringing claims for fear of being arbitrarily charged with the defendant's fees. Pl.'s Opp. 18-19. The Court declines to address this argument. A court may judicially determine whether the parties have submitted a dispute to arbitration, but, "in other circumstances, resolution by the arbitrator remains the presumptive rule." Gay, 511 F.3d at 387. Because the agreement contains a severability clause, the possible unconscionability of this fee-shifting provision will not render the arbitration agreement itself unenforceable, and the arbitrator may thus resolve this issue for the parties. For these same reasons, the Court will decline to resolve the defendant's motion to dismiss the plaintiff's claim of marital status discrimination and will leave this determination for the arbitrator. Id.

14

agreement provides that an arbitrator from the American Arbitration Association will decide the disputes, and the arbitrator must abide by the association's rules. The arbitrator must set forth the findings and conclusions upon which the decision is based, and a court may set aside the arbitrator's decision upon a material error of law, or in accordance with the FAA.

Third, with respect to the plaintiff's argument that she did not knowingly and willfully waive her right to a jury trial, this argument fails. The Court of Appeals for the Third Circuit has explicitly rejected a heightened "knowingly and willfully" standard for arbitration agreements, holding that only a generally applicable principle of contract law, such as fraud or duress, may make an arbitration agreement unenforceable. Seus, 146 F.3d at 183-84 (rejecting "knowing and voluntary" standard used to evaluate waiver of substantive claims to evaluate enforcement of arbitration agreements).

Fourth, the Court finds that strong public policy favors enforcement of the arbitration agreement, rather than renders it unenforceable. Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). The plaintiff's public policy argument is further undercut because she premises it solely on the assertion that Toll compelled its employees to agree to arbitration or risk the loss of their jobs. The fact

15

that courts routinely find compulsory arbitration clauses enforceable in employment contexts demonstrates that such agreements are not contrary to public policy. See, e.g., Zimmer, 523 F.3d 224; Seus, 146 F.3d 175; Blair, 283 F.3d 595; Grant v. Philadelphia Eagles, L.L.C., No 09-1222, 2009 U.S. Dist. LEXIS 53075 (E.D. Pa. 2009).

    C.   Attorneys' Fees

In its motion, the defendant argues that it is entitled to attorneys' fees and costs because the plaintiff brought suit in district court rather than before an arbitrator. It states that the agreement is enforceable, and the plaintiff's failure to voluntarily dismiss this action after counsel for Toll alerted the plaintiff's counsel of the arbitration agreement makes this lawsuit frivolous. See EEOC v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997) ("A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.").

The Court will not award attorneys' fees to the defendant because it finds that the plaintiff's lawsuit is not frivolous. Although arbitration is the proper adjudication for the plaintiff's claims, courts have a role in the "gateway" decision as to whether a matter should be arbitrated. Gay v.

16

Creditinform, 511 F.3d 369, 387 (3d Cir. 2007). The plaintiff raised arguments based on general principles of contract law, such as duress and unconscionability, that could have rendered the arbitration agreement unenforceable. See Seus, 146 F.3d at 183-84.

III. Conclusion

For the reasons herein stated, the defendant's motion is granted to the extent that the Court will stay this matter and compel arbitration.

An appropriate order shall issue separately.